National Jewish Advocacy Center, Inc.
666 Harless Place
West Hempstead, NY 11552



March 31, 2025

<u>**VIA ECF**</u>

Hon. Margo K. Brodie, Chief United States District Court Judge
United States District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re:     *Roey Segev v. Delta Airlines, Inc.* Case No. 1:24-cv- 07838

Your Honor:

We represent the Plaintiff, a Jewish Israeli flight attendant, in the above referenced case against Delta Air Lines, Inc. ("Delta"). We submit this letter in response to Delta's March 18, 2025 letter to the Court (Dkt. No. 14) ("Letter"), which requests (1) a pre-motion conference for Delta's anticipated motion to dismiss Plaintiff's Amended Complaint ("Complaint") and (2) a stay of discovery while Delta's motion is pending.

Plaintiff's Complaint sufficiently alleges: (1) retaliation under Title VII and New York City Human Rights Law ("NYCHRL"); (2) discrimination based on religion and national origin under Title VII and the NYCHRL; and (3) whistleblower retaliation under New York Labor Law § 740. Delta's Letter misrepresents Plaintiff's Complaint, stating that "[b]oiled to its essence … [Plaintiff's] claim is that by merely questioning him in response to co-worker and passenger complaints about his conduct, Delta both discriminated against him and subjected him to an adverse employment action." Delta then argues that this case should be dismissed, on the basis that Plaintiff's allegations are speculative and conclusory. However, Delta overlooks numerous critical facts detailed in Plaintiff's Complaint, which support his claims and demonstrate that they are neither speculative nor conclusory.

## I.     <u>Delta Retaliated Against Plaintiff</u>

Plaintiff's claims of retaliation are substantiated in his Complaint. After approximately five years of exemplary service to Delta, Plaintiff's career took a drastic turn following his reports to supervisors that Delta engaged in antisemitism, violated various federal regulations, and failed to adhere to its own safety rules and protocols. Plaintiff's first report to Delta concerned antisemitic incidents. Delta never responded to Plaintiff's reports and instead entirely ignored them. Plaintiff then reported to Delta that it wrongly left Jewish flight attendants to handle to a violent passenger and violated FAA regulations and own its safety policies and protocols by failing to divert the aircraft to the nearest airport. These reports are key events discussed in Plaintiff's Complaint, which Delta fails to address in its Letter. Before Plaintiff made these reports—each of which constitutes protected activity—he had never received any performance-related complaints from Delta. It was only after Plaintiff engaged in this protected activity that he became the target of unfounded, retaliatory investigations based on baseless and offensive allegations concerning his in-flight conduct.

Delta asserts in its Letter that its investigations into Plaintiff's conduct were triggered by complaints from co-workers and passengers. Delta seemingly suggests that it is merely a coincidence that, despite Plaintiff's five years of positive performance reviews and the absence of any prior complaints, he suddenly became the target of a series of bizarre accusations and investigations only after he engaged in protected activity. Plaintiff was accused of, inter alia, failing to perform his assigned duties, refusing to make coffee for a passenger that requested it, using his personal mobile phone on multiple occasions, and engaging in inappropriate conduct while seated in a passenger seat. Specifically, the complaint regarding Plaintiff's conduct while he was seated in a passenger seat outrageously alleged that Plaintiff was wearing headphones and watching a movie on the in-flight entertainment system, while simultaneously using his personal mobile phone to view images of women in lingerie.

Delta's first investigation of Plaintiff commenced approximately two weeks after he reported to his supervisors that Delta should have diverted and landed the aircraft when he and another Jewish flight attendant were at risk from a violent passenger. During the investigation, Plaintiff was informed by his supervisors that he was being investigated for two separate in-flight incidents of alleged misconduct, which had purportedly occurred approximately six months



and five months prior, respectively. The significant delay between the alleged incidents and the initiation of the investigations was Plaintiff's first indication that the investigation was retaliatory. Furthermore, the accusations made against Plaintiff were false.

During the course of another investigation, Plaintiff's supervisors informed him that he was being accused of improper conduct on a flight that he had worked on with Sharon Lavy, another Jewish Israeli flight attendant. However, the supervisors refused to provide Plaintiff with the flight number or date of the flight in question, thereby depriving him of the ability to adequately respond to the allegations against him. This lack of transparency was yet another indication that Delta was engaging in retaliatory actions. Additionally, the accusations made against Plaintiff were once again false. During the course of this investigation, Plaintiff was accused of watching a movie on Delta's in-flight entertainment system while simultaneously viewing images of women in lingerie on his personal phone.

In an attempt to support this allegation, Plaintiff's supervisor presented a video, which was purportedly intended to serve as evidence of the alleged misconduct. The video, however, only depicted the back of an individual's head, and it was ambiguous as to what the person was doing or who the individual was. Nonetheless, Plaintiff's supervisor insisted that Plaintiff watch the video three separate times and repeatedly asked him whether he was the person shown in the footage. In response, the Plaintiff explained that, although the video showed the back of a person's head, he could not identify the individual or determine what the individual was doing.

In Delta's Letter the Court, Plaintiff is accused of making an "implausible claim" that Delta had altered this videotape using AI or deepfake technology to depict him using his cellphone on a flight instead of fulfilling his safety-sensitive job duties. However, Plaintiff never alleged that the video had been altered. Rather, he simply asserted that the aircraft shown in the video was not type of aircraft that he and Ms. Lavy worked on together.  Plaintiff and Ms. Lavy had only ever worked on Airbus 330 together.  The fact that Delta provided Plaintiff with a video showing an individual on a different type of aircraft—one that was not consistent with the flight on which Plaintiff is alleged to have committed misconduct—further suggests that Delta was retaliating against Plaintiff, rather than conducting a proper and impartial investigation of the complaint.

Plaintiff unequivocally denied each of the allegations lodged against him and Delta has never been able to substantiate them. Given the close proximity in time between Plaintiff's protected activities and Delta's subsequent investigations of Plaintiff, became reluctant to report any other incidents due to a reasonable fear of further retaliation. Plaintiff suffered extreme emotional distress as a result of the investigations frivolously conducted against him and significantly reduced the hours he worked to avoid the possibility of further retaliatory frivolous investigations.

Under Title VII's anti-retaliation provision, it is unlawful for an employer to discriminate against an employee for engaging in protected activity, including opposition to discrimination. As the Supreme Court held in *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53, 57 (2006), retaliation is unlawful when the retaliatory actions are "harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." The NYSHRL similarly prohibits retaliation in response to a protected activity. Given the close temporal proximity between Plaintiff's reports and the unfounded investigations that were then lodged against him, a reasonable employee would be deterred from engaging in further protected activity.

Plaintiff has met the prima facie requirements for retaliation, as outlined by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973): (1) he engaged in protected activity, (2) Delta knew of such protected activity, (3) he suffered adverse employment actions through frivolous interrogations, and (4) there was a causal connection between the protected activity and the adverse employment action. *See also Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005). Delta's assertion that Plaintiff did not suffer an adverse employment action because he was not terminated, demoted or reassigned is erroneous. The baseless, embarrassing and retaliatory investigations with which he had to contend constituted adverse employment actions that resulted in a material change in his employment conditions.  A causal connection exists between Plaintiff's protected activity and Delta's adverse employment actions due to the close proximity in time between them. *Cifra v. Gen. Elec. Co.,* 252 F.3d 205, 216 (2d Cir.2001) (holding that the causal connection required for a retaliation claim may be established indirectly by showing that the protected activity was closely followed in time by the adverse action).





## II. **Delta Discriminated Against Plaintiff**

Plaintiff's claims of discrimination and disparate treatment are substantiated in his Complaint. First, Delta completely ignored Plaintiff's complaints of antisemitic treatment despite its policy to respond to all reports of discrimination from its employees. Upon information and belief, Delta has responded to discrimination complaints that did not involve Jews or antisemitism.

Second, on a flight where a passenger became unruly, Delta left Plaintiff and another Jewish flight attendant to deal with the passenger despite FAA safety regulations and Delta's own policies and protocols that require aircrafts to divert to the nearest airport under such circumstances. Upon information and belief, Delta has diverted flights when non-Jewish flight attendants were at risk from unruly passengers.

Lastly, Delta knowingly employs flight attendants who openly support Hamas—a group designated by the U.S. Department of State as a Foreign Terrorist Organization, that calls for the eradication of all Jews and the destruction of Israel. The Plaintiff, along with 44 other Jewish flight attendants, reported multiple pro-Hamas social media posts made by these Hamas supporting flight attendants to their supervisors in writing. These posts clearly violated Delta's established social media policies, yet Delta chose not to terminate these employees. Furthermore, upon information and belief, at least one such employee worked on flights to and from Israel when Delta was still operating flights to Tel Aviv, which is a flight route that Plaintiff regularly serviced. Upon information and belief, Delta has a unique tolerance for employees who openly advocate for the eradication of Jews, as no other ethnic, racial, or national group of individuals employed by Delta has coworkers at the company who publicly call for their annihilation.

## III. **Delta Retaliated Against Plaintiff Following His Engagement in Whistleblower Activities**

Plaintiff engaged in protected whistleblower activity by reporting a safety concern to his supervisor regarding a Delta pilot's failure to make an emergency landing after a violent passenger posed a significant threat to onboard personnel, in violation of FAA safety regulations. Additionally, Plaintiff reported hazardous conditions on a separate Delta flight, during which the aircraft was left idle on the tarmac and passengers were kept aboard while the cabin temperature reached approximately 115 degrees Fahrenheit, in violation of FAA regulations. As a result, several passengers and crew members required medical attention from first responders, and several passengers fainted and were transported to a local hospital. In retaliation for these reports, Delta initiated unfounded and retaliatory investigations into Plaintiff's conduct, which began in the same month he raised these concerns, clearly in response to his protected whistleblower activity.

\*        \*        \*

For all of the foregoing reasons, Plaintiff's Complaint presents sufficient factual content to support his allegations. Delta's request for a pre-motion conference to discuss its anticipated motion to dismiss should be denied, as it would only delay necessary proceedings and further harm Plaintiff. Moreover, Delta has not demonstrated a likelihood of success on its motion to dismiss, and a stay of discovery would unduly prejudice Plaintiff by delaying his ability to gather evidence necessary to support her claims.

We respectfully request that the Court deny Delta's request for a pre-motion conference and a stay of discovery.

Respectfully submitted,

/s/ *Lauren Israelovitch*
Lauren Israelovitch

cc: All Counsel of Record (via ECF)

